**Emma PARR et al., Appellants,**

v.

**CITY OF ERLANGER, Appellee.**

Court of Appeals of Kentucky.

March 21, 1969.

Ervin L. Bramlage, Erlanger, for appellants.

Harry L. Riggs, Jr., Riggs & Riggs, Erlanger, for appellee.

CULLEN, Commissioner.

In this action the City of Erlanger sought to enforce and collect from the appellant property owners certain assessments for street, water and sewer improvements the cost of which had been assessed against abutting property. The appellants resisted payment on the ground that their property had not been benefited. The appellants' property consisted of nine lots fronting on Talbot Street and one corner lot which faced Talbot Street and Erlanger Road. The assessment for street, water and sewer improvements on Talbot Street was $9,109.-95. This was against all of the appellants' lots. There was a separate assessment of $424.05 against the corner lot alone, for an extension of the water main on Erlanger Road. The circuit court held the assessment valid and enforceable except for the amount of $141.10 by which the Talbot Street assessments were found to exceed 65 percent of the value of the lots, such excess amount being void under KRS 94.305. The court also held the appellants chargeable with a 10·percent penalty and with interest from the date the assessments were due (November 20, 1957). See KRS 94.315. The total amount of the judgment was $14,796.22. The property owners have appealed, asserting as their principal argument that the assessments should be held void because the appellants' property was not benefited.

■ Approximately nine months after the assessments became due (the work of course having previously been completed) the appellants sold to the Kentucky Department of Highways seven of their lots, and more than half (off the back) of the other three lots. They received a price of $23,200.[1] The department acquired the land for right of way for Interstate Highway No. 75. The fact that this land was included in the *planned* right of way for I–75 was known to the City of Erlanger before it undertook the Talbot Street improvement program.

The substance of appellants' argument of no benefits, as relates to the Talbot Street assessments, is that the *use* to which the city knew the appellants' property would be put (a highway right of way) was one for which the street, water and sewer improvements would be of no benefit; therefore, the property was not benefited. The simple answer is that the Department of Highways *paid* the appellants for the property on the basis that it *was benefited;* as far as *value* is concerned the property when in the hands of the appellants was benefited, because its *value* was substantially enhanced. When the Department of Highways bought the property it was classed and paid for as residential lots improved with street, water and sewer. No doubt it would have been better as far as the *department* was concerned for the improvement projects not to be made, but that is of no matter to the *appellants.* As far as they are concerned the situation is the same as if they had sold their lots to a nature lover for a bird sanctuary—so long as they received full value in the sale it could make no difference to them, financially, to what use the purchaser devoted the property.

[1]. Out of this purchase price the amount of the assessments, $9,109.95, was put in escrow. Accordingly, the judgment exonerated the department of any liability.

■ With respect to the assessment against the corner lot for the water main extension on Erlanger Road the argument is of a different character. It appears that when the water main originally was constructed on Erlanger Road, in 1948 or 1949, it *terminated* at a point halfway across the frontage of the corner lot on Erlanger Road, and the lot owner was assessed only for the number of front feet across which the main extended. In the 1957 extension project here in controversy the main was extended on across the remaining front footage of the corner lot and a considerable distance up the road. The argument of the appellants is that the 1957 extension was of no benefit to the corner lot because it already was receiving water service from the main; that the only purpose of the extension was to serve other property up the road, and that such purpose was not one for which the corner lot could be assessed.

Again we find a simple answer. Clearly, when the original main was laid in 1948 or 1949 it could have been run across the entire frontage of the corner lot to serve other property up the road, and the corner lot would have been assessable for its entire frontage. The fact that the city did not do so originally, but waited some eight or nine years to do it, furnishes no ground for relieving any of the frontage of the lot from assessability. Of course lot owner John Doe would be happy if the water main were merely to *reach* his lot and not extend all the way across, and he be assessed only for a minimal frontage. But surely he would not expect, then, that his neighbor Richard Roe up the line, across whose entire frontage the main must run in order to reach Doe's lot, should pay for such reaching footage. As a practical matter each owner along the street must pay for the frontage across his lot necessary for the main to reach his neighbor *down* the main, because his neighbor *up* the main is paying to get the line to *him*. (We note that the present statute enacted in 1950, KRS 94.304, makes the entire frontage of.

a lot assessable for a water line even though the line does not extend all the way across the frontage.)

The final argument relates to the matter of penalty and interest. As stated at the outset of this opinion, the trial court found that the assessments exceeded 65 percent of the value of the lots by $141.10 (about 1.2 percent of the assessments), and that such excess was void under KRS 94.305. The appellants argue that they had no obligation to pay the assessments until a *correct* bill was presented to them; that the assessments were incorrect by reason of containing the excess amount above mentioned; and therefore they are not chargeable with penalty and interest.

■ In Meyers v. Arcadia Realty Foundation, Ky., 367 S.W.2d 836, this court recognized the rule that a taxpayer is excused from payment of penalties and interest when it is judicially determined that he "has resisted payment of his taxes in good faith," but we pointed out that one of the elements of a good faith resistance is that the taxpayer "acted promptly to have * * * (his) tax liability determined."

■ In the instant case the appellants simply refused, for a period of almost eight years, to pay the assessments. They took no action to have any adjustment made in the amount of the assessments; they did not point out any error in the amount and seek a correction; instead they flatly denied any liability at all. This cannot be considered a good faith resistance such as should relieve them of penalty and interest.

■ The minor excessiveness of the assessments (about 1.2 percent) here does not put them in the same category as the substantially incorrect and inequitable assessments involved in Kelly v. Adams, 229 Ky. 604, 17 S.W.2d 706. There the taxpayers had no means of ascertaining what the correct assessment would be. Here the only dispute as to *amount* was as to the claimed

excess over 65 percent of value, and the taxpayers easily could have tendered payment of all but the claimed excess. See Orr v. Mann, 208 Ky. 46, 270 S.W. 491.

The judgment is affirmed.

All concur.